**PUBLIC VERSION**

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

WACO DIVISION

| | |
|---|---|
| Advanced Silicon Technologies, LLC,<br><br>　　　　　Plaintiff,<br>v.<br><br>NXP Semiconductors N.V.,<br>NXP B.V., and<br>NXP USA, Inc.<br><br>　　　　　Defendants. | Case No. 6:22-cv-00466-ADA-DTG<br><br>**Jury Trial Demanded** |

**Advanced Silicon Technologies' Opposition to**
**NXP's Motion for Intra-District Transfer (ECF No. 46)**

## Table of Contents

Table of Authorities ............................................................................................................. ii

1. Introduction ................................................................................................................. 1
2. NXP Is a Global Conglomerate That Does Not ▓▓▓▓▓▓
   ▓▓▓▓▓▓▓▓▓▓▓▓ in the Austin Division .............................................................. 2
   2.1. Only Some of NXP's Total Workforce Lives and Works in Austin ........................ 2
   2.2. NXP Employees Do Not ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ .............. 3
   2.3. NXP's Motion Identifies No Austin-Based Witnesses or Documents
        Relevant to AST's Infringement Claims .................................................................. 5
3. Recent Fifth Circuit Law Stresses the High Bar for § 1404(a) Motions ............................ 6
4. The *Gilbert* Factors Favor this Court Based on the Insufficient Evidence in
   NXP's Motion and the Contrary Evidence AST Extracted in Venue Discovery ................ 7
   4.1. The Relevant Sources of Proof Are Electronic or Outside this District .................... 8
   4.2. No Likely Austin Witnesses Would Suffer from Traveling to Waco,
        Which Is More Convenient for Out-of-State Witnesses, and AST
        Will Cover Travel Costs for Any Austin-Based NXP Witnesses ........................... 11
   4.3. At Least One Major Non-Party Resides within 100 Miles of Waco,
        but Not within 100 Miles of Austin ....................................................................... 12
   4.4. Several Practical Problems Threaten this Case, If Transferred ............................... 13
   4.5. Relative Court Congestion Slightly Weighs against Transfer ................................ 14
   4.6. All NXP's Arguments Boil Down to a "Localized Interest" Plea ........................... 15
5. Conclusion ................................................................................................................. 15

## Table of Authorities

**Cases**

*Ancora Tech., Inc. v. LG Elecs. Inc.*,
   No. 1:20-cv-00034-ADA (W.D. Tex. June 2, 2021) .................................................. 12

*BillJCo, LLC v. Apple Inc.*,
   No. 6:21-cv-00528-ADA,
   2022 WL 607890 (W.D. Tex. Mar. 1, 2022) .................................................... 9, 10

*Def. Distributed v. Bruck*,
   30 F.4th 414 (5th Cir. 2022) .................................................................. 6

*Fintiv Inc. v. Apple Inc.*,
   No. 6:18-cv-00372,
   2019 WL 4743678 (W.D. Tex. Sept. 10, 2019) .................................................... 8

*Future Link Sys., LLC v. Advanced Micro Devices, Inc.*,
   No. 6:20-cv-01176-ADA (W.D. Tex. Oct. 12, 2021) ............................................... 11

*Gulf Oil Corp. v. Gilbert*,
   330 U.S. 501 (1947) .......................................................................... 7

*In re Apple Inc.*,
   979 F.3d 1332 (Fed. Cir. 2020) ............................................................... 9

*In re Genentech, Inc.*,
   566 F.3d 1338 (Fed. Cir. 2009) ........................................................... 6, 11

*In re Juniper Networks*,
   14 F.4th 1313 (Fed. Cir. 2021) ............................................................... 9

*In re Planned Parenthood Fed'n of Am., Inc.*,
   52 F.4th 625 (5th Cir. 2022) ............................................................ passim

*In re Volkswagen AG*,
   371 F.3d 201 (5th Cir. 2004) ................................................................ 11

*In re Volkswagen AG*,
   545 F.3d 304 (5th Cir. 2008) (en banc) ............................................. 6, 7, 9, 11

*MV3 Partners LLC v. Roku, Inc.*,
   No. 6:18-cv-00308-ADA,
   2019 WL 10981851 (W.D. Tex. June 25, 2019) .................................................. 12

*ParkerVision, Inc. v. Intel Corp.*,
   No. 6:20-CV-00108-ADA,
   2021 WL 401989 (W.D. Tex. Jan. 26, 2021) ................................................... 13

*VLSI Tech. LLC v. Intel Corp.*,
   No. 1:19-cv-00977-ADA,
   2020 WL 8254867 (W.D. Tex. Dec. 31, 2020) .............................................. 12, 14

1. **Introduction**

The public and private interest factors favor the continued orderly conduct of proceedings here instead of the Austin Division. True, NXP has its U.S. headquarters in Austin. But that starts, rather than ends, the § 1404(a) inquiry. NXP has not named a single witness physically present in the Austin Division and likely to testify at trial and has not identified any specific evidence available only in Austin, either. And despite NXP framing the issue as a simple balancing test with any slight edge to the Austin Division compelling transfer, the bar to establish a transferee venue as *clearly* more convenient does and should get harder to clear as the proximity between transferee and transferor venues decreases. NXP must show a particularly acute burden of proceeding here or advantage to the Austin. NXP takes neither tact here.

Its motion to transfer instead makes generalized references to its Austin facilities and headcount, naming some supervisory engineers and other executives without even attempting to tie their work to the accused functionality—making them likely document custodians or percipient witnesses—and without even identifying evidence located uniquely in the Austin division. NXP's motion aims to direct the Court's focus to its overall footprint and aggregate number of employees whose jobs have some theoretical connection to the family of infringing products at issue. But NXP paints this picture with far too broad a brush. Venue discovery confirms that relevant evidence is either electronically accessible from anywhere or kept outside this District.

NXP's motion gives the Court no evidence—much less evidence establishing Austin as "clearly more convenient" than Waco—for this Court to unwind its investment in the proceedings so far and force the parties to regroup in the literal next courthouse over.

—1—

## 2. NXP Is a Global Conglomerate That Does Not ▮▮▮▮▮▮ ▮▮▮▮▮▮▮ in the Austin Division

In its motion, NXP[1] fancies itself as a business mainly based in Austin that shepherds the design and development of microprocessors mainly within the boundaries of the Austin Division. In truth, NXP is a global conglomerate with the bulk of its workforce overseas and its U.S. workforce scattered throughout the country. And it turns out from venue discovery that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See infra.*, § 2.2.

### 2.1. Only Some of NXP's Total Workforce Lives and Works in Austin

Netherlands-based NXP employs about 31,000 people across more than 30 countries, with about 9,300 of those dedicated to research and development activities. *See* Ex. A at 12. Of its three global regions, NXP employs the fewest personnel in the Americas (shown in yellow):



*Id.* NXP's U.S. entity claims to employ about 4,000 people total in its Austin headquarters.

---

[1] AST dismissed without prejudice NXP Semiconductors N.V. and NXP B.V.—both Dutch entities—on conditions including that "all information, witnesses, and documents in the custody or control of NXP Semiconductors, N.V. and NXP B.V. or their other subsidiaries, if any, shall be deemed in the possession, custody, or control of NXP USA, Inc. . . . ." ECF No. 34, ¶ 3.

### 2.2. NXP Employees Do Not Design or Develop the Infringing Functionality

NXP's motion implies that a small team of senior engineers—led by its venue declarant and deponent Allen Wagner—work with the Business Line-Edge Processing team to oversee the wholesale design and development of the accused products. But NXP's motion presents facts at a level of abstraction that renders them meaningless in a § 1404(a) analysis. Mr. Wagner confirmed in deposition that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

NXP's most percipient witness and 30(b)(6) designee on venue topics, Mr. Wagner, explained that each i.MX microprocessor ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Mr. Wagner testified that the i.MX8 processor, for example, has ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮ *See* Ex. B at 26:5 to 27:2. And ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See id.* at 28:2–5.

The asserted patents—U.S. Patent Nos. 7,804,435 and 8,933,945—generally cover functionality ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The '435 patent discloses improvements in video decoder technology, with "video decoder" or "video decoding" appearing in the preamble or body of each independent claim. *See* Ex. C at 17:52 to 20:34. And the preamble of each independent claim of the '945 patent indicates that the claim covers a "graphics processing unit." *See* Ex. D at 9:65 to 12:37. Mr. Wagner confirmed that the graphics processor (GPU) and video decoder (VPU) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Ex. B at 28:19 to 30:23.

NXP's motion identifies VeriSilicon and Amphion/Allegro DVT in passing as "[o]ther third-parties *involved* in the testing and development of *portions* of the Accused Products." ECF No. 46 at 2 (emphasis added). NXP's framing gets it wrong in at least three major ways. First, the "portions" of the accused products at issue are not one part of many that AST accuses; ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Second, these third parties are

—3—

■■■

"involved" in that the ■■■

■■■

■■■ *See, e.g.*, Ex. B at 88:13 to 89:5. Third, NXP's motion omits ■■■

■■■

A more accurate reading of NXP's brief, then, might say that ■■■

■■■

■■■ Mr. Wagner described the GPU and VPU as

■■■ adding ■■■

■■■

■■■ Ex. B at 87:8 to 89:5.

■■■

■■■

■■■ *See* Ex. E at 3. ■■■

■■■ *See id.* ■■■

■■■

■■■ Ex. F at 4. ■■■

■■■ *See* Ex. G at 1–2; Ex. B at 116:11–23. While

■■■

■■■ *See* Ex. H at

3; Ex. B at 115:11 to 116:2. Mr. Wagner testified that ■■■

■■■

■■■ *See, e.g.*, Ex. B at 99:18–24. Mr. Wagner did not know ■■■

■■■ nor could he identify specific witnesses involved with

—4—

███████████████████████████████████████████████

███████████████████████████████████████ *Id.* at 100:9–19. Mr. Wagner testified that the likely work location of NXP personnel who ████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

██████████████████████████████ *See id.* at 108:9 to 109:8, 110:22 to 111:7, 115:16 to 116:2.

### 2.3. NXP's Motion Identifies No Austin-Based Witnesses or Documents Relevant to AST's Infringement Claims

The complexity and numerosity of ███████████████ and the number of ███████ ██████████ reinforces that identifying relevant documents and witnesses cannot occur from 30,000 feet. The required analysis—which NXP motion did not perform in its motion despite having all the information available to do it—would have involved identifying individuals who work on ████████████████████████████████████████████████ ██████████████████████████████████████████

NXP's motion identifies Mr. Wagner and his nine engineering leads—only three of whom work out of Austin—as the connective tissue for i.MX product development. Again, what may hold water in general terms does not move the needle when applying the public and private factors to AST's patent claims here. Neither Mr. Wagner nor any of the nine engineering leads mentioned in his declaration have ███████████████████████████████████ ██████████████████████████ *See, e.g.*, Ex. I at 1–2; Ex. B at 36:12–20, 40:13–22, 42:7 to 43:4, 44:4-6, 45:10–12, 47:21–23, 53:17–19, 54:8–10, 57:18 to 58:5. NXP identified no witnesses or documents regarding ███████████████████████████████████[2]

---

[2] NXP forced AST to scratch and claw for every document and answer it obtained during venue discovery. NXP produced no documents at all until AST threatened motions practice. If NXP's Reply offers evidence not in its original motion to help its cause now after forcing AST to squeeze water from a stone in venue discovery, the Court should disregard it or at least assign weight and credibility to this self-help exercise with extreme skepticism.

Mr. Wagner pointed to job functions that may intersect with these responsibilities, but named no witnesses or document repositories anywhere, let alone in Austin.

### 3. Recent Fifth Circuit Law Stresses the High Bar for § 1404(a) Motions

The parties agree that Fifth Circuit law governs motions to transfer for convenience in this District because the propriety and convenience of a given venue can arise in any civil case and does not derive from U.S. patent law. ECF No. 46 at 3. To the extent the Federal Circuit has interpreted Fifth Circuit law, that also governs. *See, e.g.*, *In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009). Fifth Circuit holdings may directly or indirectly endorse or rebuke Federal Circuit decisions. Fifth Circuit decisions that intercede older, conflicting Federal Circuit holdings should take primacy since Fifth Circuit law ultimately controls the analysis.

The Fifth Circuit spoke mere weeks ago on the subject matter raised here. Broadly, the Court "stress[ed] that the decision of whether to transfer a case is committed to the district court's discretion." *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 629 (5th Cir. 2022) (citing *In re Volkswagen AG*, 545 F.3d 304, 311 (5th Cir. 2008) (en banc) ("*Volkswagen II*")). "There can be no question but that the district courts have 'broad discretion in deciding whether to order a transfer.'" *Planned Parenthood*, 52 F.4th at 629 (quoting *Volkswagen II*, 545 F.3d at 311). "The ultimate inquiry is whether the destination venue is **'clearly more convenient than the venue chosen by the plaintiff**.'" *Planned Parenthood*, 52 F.4th at 629 (citing *Volkswagen II*, 545 F.3d at 315) (emphasis added).

The Fifth Circuit also stressed that ordinary inconvenience to a defendant cannot support transfer for convenience. "[W]henever a defendant is haled into court, some inconvenience is expected and acceptable." *Planned Parenthood*, 52 F.4th at 629 (quoting *Def. Distributed v. Bruck*, 30 F.4th 414, 433 (5th Cir. 2022). And "the fact that litigating would be more convenient

elsewhere is **not enough** to justify transfer." *Planned Parenthood*, 52 F.4th at 629 (quoting *Def. Distributed*, 30 F.4th at 433) (emphasis added).

The § 1404(a) analysis has two parts. Only the second matters here, as venue is proper in either division. The Fifth Circuit applies eight private and public interest factors set by *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947) in deciding the issue. *See Planned Parenthood*, 52 F.4th at 630. The private factors are "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 315. The public factors are "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or the application of foreign law." *Id.*

In weighing these factors, "no one consideration 'can be said to be of dispositive weight.'" *Planned Parenthood*, 52 F.4th at 630 (quoting *Volkswagen II*, 545 F.3d at 315). And "[t]he burden to prove that a case should be transferred for convenience falls squarely on the moving party." *Asetek Danmark A/S v. Shenzhen Apaltek Co., Ltd.*, No. W-21-CV-00501-ADA, 2022 WL 1445391, at *2 (W.D. Tex. May 6, 2022). "The burden that a movant must carry is not that the alternative venue is more convenient, but that it is clearly more convenient." *Id.*

**4.      The *Gilbert* Factors Favor this Court Based on the Insufficient Evidence in NXP's Motion and the Contrary Evidence AST Extracted in Venue Discovery**

The movant must present evidence that the transferee forum is clearly more convenient, meaning the Court should hold NXP to a higher standard than the cursory examination of its business the motion offers. NXP's motion reads like it must only slightly tip the scales 51/49 based on its overall footprint in

each division. But the Fifth Circuit requires more. And when AST interrogated the details underlying NXP's generalizations in venue discovery, the resulting record resoundingly rejects the relief requested.

The chart below presents the parties' views on each *Gilbert* factor. NXP's refusal to give this Court the nod under any factor protests too much to have credibility—the truth always has more nuance:

| *Gilbert* Factor | NXP | AST |
|---|---|---|
| Relative ease of access to sources of proof | Austin | Neutral |
| Cost of attendance for willing witnesses | Austin | Waco |
| Availability of compulsory process to secure the attendance of witnesses | Neutral | Waco (Slightly) |
| All other practical problems that make trial of a case easy, expeditious, and inexpensive | Austin | Waco |
| Administrative difficulties flowing from court congestion | Neutral | Waco |
| Local interest in having localized interests decided at home | Austin ||
| Familiarity of the forum with the law that will govern the case | Neutral ||
| Avoidance of unnecessary problems of conflict of laws or in the application of foreign law | Neutral ||

### 4.1. The Relevant Sources of Proof Are Electronic or Outside this District

The "relative ease of access to sources of proof" factor resolves neutrally. It deserves less weight than previously given under new Fifth Circuit precedent. NXP's motion names no percipient witnesses or documents in Austin. And venue discovery confirmed that the documents and witnesses most likely to have probative information are outside either division.

"In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Fintiv Inc. v. Apple Inc.*, No. 6:18-cv-00372, 2019 WL 4743678, at *2 (W.D. Tex. Sept. 10, 2019). The Fifth Circuit clarified weeks ago that "[t]he location of evidence bears much more strongly on the transfer analysis when, as in *Volkswagen*, the evidence is physical in nature." *Planned Parenthood*, 52 F.4th at

—8—

630 (citing *Volkswagen II*, 545 F.3d at 316-17). *Planned Parenthood* rejected the argument—made by the appellant citing Federal Circuit authority like NXP cites here—that the presumption of evidence existing at Defendants' facilities overrides the reality that electronic records can be accessed from nearly anywhere. *See Planned Parenthood*, F.4th at 630 (rejecting petitioner's arguments based on *In re Juniper Networks*, 14 F.4th 1313 (Fed. Cir. 2021) and *In re Apple Inc.*, 979 F.3d 1332 (Fed. Cir. 2020), among others). Mere access to electronic documents from the transferee venue matters little, if at all. *See, e.g.*, *BillJCo, LLC v. Apple Inc.*, No. 6:21-cv-00528-ADA, 2022 WL 607890, at *9 (W.D. Tex. Mar. 1, 2022) ("The imprecision of [Apple's] representation encompasses a scenario in which Apple's documents are not located in the NDCA at all, but are merely accessible there.").

NXP rests on the presumption that "[e]vidence in a patent infringement case typically comes from the accused infringer" and infers that "documentation and witnesses relating to the Accused Products are predominantly in the Austin Division." ECF No. 46 at 5–6. Even if true, this does not go far enough. NXP does not identify any specific hard copy or electronic documents that bear on its alleged infringement in the Austin Division, much less enough specific evidence to show Austin as clearly more convenient. But the presumption is also unfounded here. Venue discovery confirmed that no named Austin engineers ▇▇▇▇ ▇▇▇▇ that NXP does not even have ▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇ and that in any case NXP maintains its electronic documents outside this District.

Mr. Wagner's declaration says that "[e]lectronic versions of technical documentation relating to the work of the engineering teams is stored on servers in **Phoenix** and **Amsterdam**." ECF No. 46-1, ¶ 9 (emphasis added). In its venue interrogatory responses, NXP also identified

—9—

███ Ex. J at 1–18. None of these ██████████████ And Mr. Wagner identified no reason employees could not access electronic documents from Waco, from their homes, or from an overwater bungalow in the Maldives. *See, e.g.*, Ex. B at 123:4 to 125:21; *accord BillJCo*, 2022 WL 607890, at *9 ("[N]one of the Apple personnel BillJCo deposed testified that these documents are also not accessible from Texas . . . ."). The availability and location of electronic documents thus cannot support transfer to the Austin Division.

Tellingly, NXP did not even investigate before filing its motion whether it has relevant hard copy documents in the Austin Division. NXP's motion argues only that "*[a]ny* physical technical documents are maintained and located in Austin." ECF No. 46 at 2 (emphasis added). Mr. Wagner's declaration said only that "[t]o the extent hard copies of technical documents for the i.MX products exist, they are maintained by the engineers in Austin." ECF No. 46-1, ¶ 9. These conditional statements have no evidentiary value.

NXP identifies no documents, but merely infers their existence from the faulty premise that relevant engineering witnesses work in Austin. Even if that assumption proved valid—which we know from Mr. Wagner's deposition it does not—it would not suffice as evidence. NXP could have investigated and identified specific documents or custodians possessing evidence probative of infringement, but either did not or could not and resorted to arguing in broad strokes again. NXP cites several cases in its argument, but those cases all involve a threshold establishment of specific, named witnesses or evidence in the transferee venue. *See generally* ECF No. 46 at 6. The Court has nothing of the sort to rely on here.

The Court should not give NXP credit under this factor or consider any effort by NXP to provide more detail or evidence in its Reply, after venue discovery has closed. In any case, this

factor deserves little weight both because of the Fifth Circuit's clarity about electronic documents in *Planned Parenthood* and because the burden of transporting physical documents to Waco from Austin proves insubstantial. *See, e.g.*, *Future Link Sys., LLC v. Advanced Micro Devices, Inc.*, No. 6:20-cv-01176-ADA, ECF Nos. 54, 62 at 12–13 (W.D. Tex. Oct. 12, 2021) ("Thus, this factor favors transfer, but only slightly—AMD would suffer little inconvenience from having to shuttle documentary evidence to Waco from Austin due to their proximity.").

### 4.2. No Likely Austin Witnesses Would Suffer from Traveling to Waco, Which Is More Convenient for Out-of-State Witnesses, and AST Will Cover Travel Costs for Any Austin-Based NXP Witnesses

The "willing witnesses" factor favors Waco or resolves neutrally because no named witnesses will suffer hardship from appearing at trial in Waco. Yet travel to Waco for out-of-state witnesses will prove easier, and AST will in any case moot any incremental other expenses. According to NXP's cited caselaw, this factor can favor transfer if a "substantial number" of witnesses reside in the transferee forum. *Genentech*, 566 F.3d at 1345, *cited in* ECF No. 46 at 6. But NXP names no engineers in Austin involved in GPU or VPU design, let alone a "substantial number." Venue discovery revealed that these witnesses are ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ *See* Ex. B at 108:9 to 109:8, 110:22 to 111:7, 115:16 to 116:2.

NXP admits that any witnesses located in Austin are "approximately 100 miles" from the Waco courthouse. ECF No. 46 at 7. Only "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *In re Volkswagen AG*, 371 F.3d 201, 204–05 (5th Cir. 2004) ("*Volkswagen I*"); *accord Volkswagen II*, 545 F.3d at 317 (reiterating 100-mile "threshold"). In any case, "the convenience

—11—

of party witnesses is given little weight." *MV3 Partners LLC v. Roku, Inc.*, No. 6:18-cv-00308-ADA, 2019 WL 10981851, at *3 (W.D. Tex. June 25, 2019). NXP has not named any technical witnesses in Austin who would face inconvenience to testify in Waco, nor has it named any who would face inconvenience reside within about the 100-mile radius of the Waco courthouse.

The parties can anticipate several witnesses who may travel by plane to Waco. Mr. Wagner, for instance, lives in Pennsylvania. *See, e.g.*, ECF No. 46-1 at 4. The likely relevant employees who work overseas near the ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ offices in ▬▬▬▬▬▬▬▬▬▬ respectively, will have more and better options to fly into one of the Dallas Metroplex's airports and take the shorter ride to Waco than to fly into Austin and stay at less expensive hotels than in Austin. *See, e.g.*, *Ancora Tech., Inc. v. LG Elecs. Inc.*, No. 1:20-cv-00034-ADA, ECF No. 272, slip op. at 6 (W.D. Tex. June 2, 2021).

In any case, AST will, if requested, help ease any inconvenience caused by NXP witnesses traveling to Waco from Austin for trial. AST will reimburse reasonable travel expenses and per diem lodging rates for NXP witnesses based in the Austin Division who testify at trial in Waco. *See, e.g.*, *VLSI Tech. LLC v. Intel Corp.*, No. 1:19-cv-00977-ADA, 2020 WL 8254867, at *5 n.2 (W.D. Tex. Dec. 31, 2020) ("To alleviate any concern of the rare possibility of added costs, VLSI has offered to cover these witnesses' costs of attendance in Waco."). And AST will, as is customary, depose any NXP witnesses who live and work outside the Waco Division by remote means or wherever they work and live.

This factor thus weighs against transfer or, at worst, resolves neutrally.

### 4.3. At Least One Major Non-Party Resides within 100 Miles of Waco, but Not within 100 Miles of Austin

The "availability of compulsory process" factor likely does not weigh heavily, but NXP's motion incorrectly dismisses it as irrelevant. NXP correctly notes that this factor considers

whether non-party witnesses reside within the 100-mile subpoena power of the Court. We know from NXP's motion that non-parties in the Austin area largely fall within the 100-mile radius of both the Waco and Austin courthouses. *See, e.g.*, ECF No. 46 at 7. NXP then concludes the matter without further analysis by saying both courts have the same reach. Not so.

At least one potentially important non-party resides within the 100-mile subpoena power of the Waco Division but is twice as far, and thus outside the subpoena radius, of the Austin Division: Texas Instruments. NXP cited five prior art references for the '945 patent published or patented by Dallas-based Texas Instruments in its invalidity contentions, more than any other prior artist. *See* Ex. K at 16–17. Only the Waco Division can enforce a subpoena issued to TI. This factor thus favors the Waco Division, though slightly so.

### 4.4. Several Practical Problems Threaten this Case, If Transferred

"All other practical problems" favors this case remaining in Waco. NXP hand waves this factor away by saying "[t]his case is in its infancy" and citing several things that have happened throughout its motion: most notably the claim construction process running its course and invalidity contentions. *See* ECF No. 46 at 7–8. This Court has invested in these proceedings, and the parties have invested in this Court's guiding hand. Unlike courts in the Austin Division, "the Waco Division has its own patent-specific Order Governing Proceedings ('OGP') that ensures efficient administration of patent cases." *ParkerVision, Inc. v. Intel Corp.*, No. 6:20-CV-00108-ADA, 2021 WL 401989, at *7 (W.D. Tex. Jan. 26, 2021).

The parties here have both fully benefited from the bargain in capitalizing on this Court's unique procedures. For instance, the parties negotiated a dismissal without prejudice of AST's indirect infringement allegations under the unique procedures in Section VII of the Court's OGP. *See generally* ECF No. 36. In exchange for dismissing its indirect infringement claims without prejudice, AST gained the right under the OGP to re-file within three months after fact discovery

opens. *See, e.g.*, *id.* NXP gained the benefit of not having to face indirect infringement allegations until after it takes discovery into facts supporting indirect infringement. These early investments in the cadence of the discovery and pretrial phases of this case reflect both parties' and the Court's investment in proceeding orderly towards trial.

On another topic, the cost to attend trial in Waco is less than in Austin. According to the General Services Administration's per diem guidelines for Federal employees, daily costs of travel in Waco during trial comfortably beat those in Austin:

| GSA FY2023 Per Diem | Lodging (Nightly Avg.) | Lodging (One-Week Avg.) | Lodging (Two Weeks Avg.) |
|---|---|---|---|
| **Waco** | $109.67 | $767.69 | $1,535.38 |
| **Austin** | $150.25 | $1,051.75 | $2,103.50 |
| **Daily Difference** | Austin +37% | Austin +$284.06 | Austin +$568.12 |

*See* Exs. L, M; *see also VLSI*, 2020 WL 8254867, at *4.

Transfer to Austin thus presents practical problems not present in this Division and this factor weighs against transfer but carries less weight than others.

### 4.5. Relative Court Congestion Slightly Weighs against Transfer

Relative court congestion slightly favors the Waco Division. *Planned Parenthood* clarified that a case that "appears to be timely proceeding to trial" in the current forum weighs against transfer. *Planned Parenthood*, 52 F.4th at 631. The parties here have exchanged infringement and invalidity contentions, have nearly completed the claim construction briefing process, and have already invoked this Court's unique OGP procedures to streamline the case by deferring indirect infringement claims until fact discovery. All these factors counsel against transfer under *Planned Parenthood*.

### 4.6. All NXP's Arguments Boil Down to a "Localized Interest" Plea

This factor should matter less than the more specific private factors because the "localized interest" factor acts as an abstraction of the more detailed inquiries under the private interest factors. True, NXP has a sizeable office in Austin and a few thousand employees. But venue discovery revealed that none of them seemingly worked on or have particular knowledge about ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ NXP's repeated pleas to its overall large size, footprint in Austin despite that footprint not having any involvement in ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ means that its entire motion is one large "localized interest" argument. This factor cannot and should not swallow the others whole just because NXP keeps beating the drums. This is particularly so under the Fifth Circuit's recent instruction that cases involving diverse enterprises not confined to a local forum and with witnesses "across the country"—much less abroad—are "not the sort of localized case where the citizens of Austin have a greater 'stake' in the litigation" than the citizens of the transferor venue. *Planned Parenthood*, 52 F.4th at 632.

The generalities NXP espouses about its Austin footprint belong under this factor and only under this factor in the § 1404(a) analysis. NXP is a global conglomerate and the bulk of the relevant witnesses and documents do not reside in this District. This factor deserves little weight.

### 5. Conclusion

"Defendants should expect and accept some inconvenience when haled into Court." *Asetek*, 2022 WL 1445391, at *2. Some minor inconvenience is the maximum hardship to NXP if this case proceeds in this Court. NXP's motion should thus be denied.

—15—

Respectfully submitted,

Dated: December 21, 2022                  By: /s/ Patrick A. Fitch
  Brian A. Carpenter (State Bar No. 3840600)
     carpenter@caglaw.com
  **Carstens, Allen & Gourley, LLP**
  1105 Wooded Acres, Suite 415
  Waco, Texas 76701
  (254) 294-1854 (Telephone)

  Robert R. Brunelli (admitted *pro hac vice*)
     rbrunelli@sheridanross.com
  Patrick A. Fitch (admitted *pro hac vice*)
     pfitch@sheridanross.com
  Alex W. Ruge (admitted *pro hac vice*)
     aruge@sheridanross.com
  Brian Boerman (admitted *pro hac vice*)
     bboerman@sheridanross.com
  **Sheridan Ross P.C.**
  1560 Broadway, Suite 1200
  Denver, Colorado 80202
  (303) 863-9700 (Telephone)
  (303) 863-0223 (Facsimile)
  litigation@sheridanross.com

  *Attorneys for Plaintiff*
  *Advanced Silicon Technologies LLC*

—16—

## CERTIFICATE OF SERVICE

I hereby certify that on December 21, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record in the above-referenced matter.

/s/ Lori R. Brown
Lori R. Brown
Paralegal
lbrown@sheridanross.com
**Sheridan Ross P.C.**
1560 Broadway, Suite 1200
Denver, Colorado 80202
Telephone: (303) 863-9700
Facsimile: (303) 863-0223
Email: litigation@sheridanross.com